IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATALIE J. STEPHENS                 *

    v.                              *   CIVIL NO. SKG-05-2574

MICHAEL J. ASTRUE,                  *
COMMISSIONER, SOCIAL SECURITY
                                          *

-------------------------------------------------------------

JULIA LITZ                          *

    v.                              *   CIVIL NO. SKG-06-2026

MICHAEL J. ASTRUE,                  *
COMMISSIONER, SOCIAL SECURITY
                                          *

-------------------------------------------------------------

BELINDA JACKSON                     *

    v.                              *   CIVIL NO. SKG-06-1598

MICHAEL J. ASTRUE,                  *
COMMISSIONER, SOCIAL SECURITY
                                          *

-------------------------------------------------------------

TORI ADDISION                       *

    v.                              *   CIVIL NO. SKG-06-2601

MICHAEL J. ASTRUE,                  *
COMMISSIONER, SOCIAL SECURITY
                                          *

MARSHA WOODLAND                  *

    v.                          *   CIVIL NO. SKG-06-2506

MICHAEL J. ASTRUE,              *
COMMISSIONER, SOCIAL SECURITY
                                *
--------------------------------------------------------------

KIM DOUGLAS                     *

    v.                          *   CIVIL NO. SKG-06-2507

MICHAEL J. ASTRUE,              *
COMMISSIONER, SOCIAL SECURITY
                                *
--------------------------------------------------------------

HENRY ALLISON                   *

    v.                          *   CIVIL NO. SKG-06-2812

MICHAEL J. ASTRUE,              *
COMMISSIONER, SOCIAL SECURITY
                                *
--------------------------------------------------------------

DAVID ANDERSON                  *

    v.                          *   CIVIL NO. SKG-06-1311

MICHAEL J. ASTRUE,              *
COMMISSIONER, SOCIAL SECURITY
                                *
--------------------------------------------------------------

KARL SHARP                      *

    v.                          *   CIVIL NO. SKG-06-2903

MICHAEL J. ASTRUE,              *
COMMISSIONER, SOCIAL SECURITY
                                *

2

ELAINE OBEE JOHNSON            *

    V.                        *    CIVIL NO. SKG-06-1360

MICHAEL J. ASTRUE,            *
COMMISSIONER, SOCIAL SECURITY
                              *
----------------------------------------------------------------

PAUL WARD                     *

    V.                        *    CIVIL NO. SKG-06-2476

MICHAEL J. ASTRUE,            *
COMMISSIONER, SOCIAL SECURITY
                              *
----------------------------------------------------------------

SUZANNE RUBEN-POPKIN          *

    V.                        *    CIVIL NO. SKG-06-2608

MICHAEL J. ASTRUE,            *
COMMISSIONER, SOCIAL SECURITY
                              *
----------------------------------------------------------------

CHRISTINE A. LATHAM           *

    V.                        *    CIVIL NO. SKG-06-2477

MICHAEL J. ASTRUE,            *
COMMISSIONER, SOCIAL SECURITY
                              *
----------------------------------------------------------------

WILLIAM L. UNDERWOOD, JR.     *

    V.                        *    CIVIL NO. SKG-06-378

MICHAEL J. ASTRUE,            *
COMMISSIONER, SOCIAL SECURITY
                              *

PHILLIP J. BRAXTON                    *

  V.                        *   CIVIL NO. SKG-06-2603

MICHAEL J. ASTRUE,                    *
COMMISSIONER, SOCIAL SECURITY
                                      *
----------------------------------------------------------------

MARIA CORDOVA                         *

  V.                        *   CIVIL NO. SKG-06-2475

MICHAEL J. ASTRUE,                    *
COMMISSIONER, SOCIAL SECURITY
                                      *
----------------------------------------------------------------

KIMBERLY CARTER                       *

  V.                        *   CIVIL NO. SKG-06-2509

MICHAEL J. ASTRUE,                    *
COMMISSIONER, SOCIAL SECURITY
                                      *
----------------------------------------------------------------

CHERYL BIRDOW                         *

  V.                        *   CIVIL NO. SKG-06-2815

MICHAEL J. ASTRUE,                    *
COMMISSIONER, SOCIAL SECURITY
                                      *
----------------------------------------------------------------

HOPE PARKER                           *

  V.                        *   CIVIL NO. SKG-07-518

MICHAEL J. ASTRUE,                    *
COMMISSIONER, SOCIAL SECURITY
                                      *

```
CRYSTAL LUNDY                        *

     V.                              *   CIVIL NO. SKG-06-2948

MICHAEL J. ASTRUE,                   *
COMMISSIONER, SOCIAL SECURITY
                                     *
----------------------------------------------------------------

DOROTHY MORALES                      *

     V.                              *   CIVIL NO. SKG-06-3120

MICHAEL J. ASTRUE,                   *
COMMISSIONER, SOCIAL SECURITY
                                     *
----------------------------------------------------------------

DEBORAH LAQUAY                       *

     V.                              *   CIVIL NO. SKG-06-3445

MICHAEL J. ASTRUE,                   *
COMMISSIONER, SOCIAL SECURITY
                                     *
----------------------------------------------------------------

DION GRAY                            *

     V.                              *   CIVIL NO. SKG-07-396

MICHAEL J. ASTRUE,                   *
COMMISSIONER, SOCIAL SECURITY
                                     *
----------------------------------------------------------------

LLEWELLYN PRATT                      *

     V.                              *   CIVIL NO. SKG-07-298

MICHAEL J. ASTRUE,                   *
COMMISSIONER, SOCIAL SECURITY
                                     *
```

EGIDIA RAMINHOS                        *

    V.                                *   CIVIL NO. SKG-07-394

MICHAEL J. ASTRUE,                     *
COMMISSIONER, SOCIAL SECURITY
                                       *
----------------------------------------------------------------

JOANNE HALL                           *

    V.                                *   CIVIL NO. SKG-06-2960

MICHAEL J. ASTRUE,                     *
COMMISSIONER, SOCIAL SECURITY
                                       *
----------------------------------------------------------------

VIRGIL EVANS                          *

    V.                                *   CIVIL NO. SKG-06-3051

MICHAEL J. ASTRUE,                     *
COMMISSIONER, SOCIAL SECURITY
                                       *
----------------------------------------------------------------

MAURICIO ZELAYA                       *

    V.                                *   CIVIL NO. SKG-07-1236

MICHAEL J. ASTRUE,                     *
COMMISSIONER, SOCIAL SECURITY
                                       *
----------------------------------------------------------------

ZAWDY BUKRY                           *

    V.                                *   CIVIL NO. SKG-07-561

MICHAEL J. ASTRUE,                     *
COMMISSIONER, SOCIAL SECURITY
                                       *

```
RAWN RUSSELL                        *

        v.                          *   CIVIL NO. SKG-07-900

MICHAEL J. ASTRUE,                  *
COMMISSIONER, SOCIAL SECURITY
                                    *
------------------------------------------------------------------

CHRISTINA WATTS                     *

        v.                          *   CIVIL NO. SKG-07-299

MICHAEL J. ASTRUE,                  *
COMMISSIONER, SOCIAL SECURITY
                                    *
------------------------------------------------------------------

DONNA WRIGHT                        *
o/b/o BRITTANY WRIGHT
                                    *
        v.
                                    *   CIVIL NO. SKG-06-1163
MICHAEL J. ASTRUE,
COMMISSIONER, SOCIAL SECURITY       *

------------------------------------------------------------------

VINCENT MILES                       *

        v.                          *   CIVIL NO. SKG-06-2949

MICHAEL J. ASTRUE,                  *
COMMISSIONER, SOCIAL SECURITY
                                    *
------------------------------------------------------------------

JOHN GAGEL                          *

        v.                          *   CIVIL NO. SKG-07-590

MICHAEL J. ASTRUE,                  *
COMMISSIONER, SOCIAL SECURITY
                                    *
```

7

## MEMORANDUM OPINION

Before the Court are thirty four Petitions for Attorney's Fees Pursuant to the Equal Access to Justice Act in Social Security Appeals (hereinafter the "EAJA").[1] The first of these petitions was filed in the summer of 2007, and others were filed throughout the year. All request an award of attorney's fees payable to the plaintiff's counsel. (See, e.g., Paper No. 31.) The government filed individual responses stating that it does not contest the amount of fees requested, but that the fees should be payable to the plaintiff, not her attorney. (See, e.g., Paper No. 34.) The plaintiffs filed reply briefs requesting additional attorney's fees for preparing the reply brief. (See, e.g., Paper No. 35.) The government has opposed the award of any fees for the litigation of this issue of proper payee, however. A hearing was held on the matter in all thirty four cases on November 14, 2007.

For the reasons set forth below, this Court holds that an award of attorney's fees under the EAJA is payable to the plaintiff's attorney and further that the plaintiff's attorney is

_____

[1] Although this opinion governs all the cases noted above, citations within are to the papers in the lead case, Stephens v. Astrue, CIVIL NO. SKG-05-2574. The party submissions in all these cases, however, are substantially the same. Individual orders will be issued to address the amount of fees sought in each case.  In 10 cases, the government stipulated to the payment of fees to counsel without waiving its legal position.  The Court shall approve those stipulations.

entitled to additional fees for litigating this issue.  Thus,
this Court GRANTS each plaintiff's Petition for Attorney's Fees
Pursuant to the Equal Access to Justice Act, with fees and costs
payable directly to counsel.

## **Discussion**

The issue before the Court is whether an award of attorney's
fees under the EAJA is payable to the plaintiff or his attorney.
This question is distinct from whether the attorney has the right
to seek fees, contrary to the party's wishes or indeed his waiver
of fees.  In deciding this question, the Court has reviewed the
subject statute in its entirety, and has considered principles of
statutory construction and the body of case law interpreting the
EAJA and other fee shifting statutes, to aid in its
interpretation of the statute here.  Having done so, the Court
rules that the attorney, not the plaintiff, is entitled to the
award of any fees sought.  While courts are divided on this exact
question under the EAJA, a historical survey and close analysis
of the case law on all fee shifting statutes demonstrates a
judicial appreciation that fees belong to the attorney, not the
client.  An interpretation of the statute that would entitle the
prevailing party to the receipt of the fee award (as opposed to
counsel) would frustrate this statute's remedial purpose and
accord the plaintiff an unintended windfall, contrary to
legislative intent and long term administrative practice.  This

judge joins many others in the "common sense policy of protecting the statutory purposes of the fee award." See FDL Technologies, Inc. v. United States, 967 F.2d 1578, 1583 (Fed. Cir. 1992) (Newman, J., dissenting).

## Analysis of the Plain Language of the Statute

The first step in interpreting a statute is to determine whether its language indicates a clear and unambiguous meaning. Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997); 2A Norman J. Singer, Sutherland Statutes and Statutory Construction § 45:2 (7th ed. 2007). The Supreme Court has said that "[o]ur inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" Robinson, 519 U.S. at 340 (quoting United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 240 (1989)).

Section 2412(d)(1)(A) of the EAJA reads:

> Except as otherwise specifically provided by statute, a court shall award *to a prevailing party* other than the United States fees and other expenses...

28 U.S.C. § 2412(d)(1)(A) (emphasis added). The government asserts that this language indicates clearly and unambiguously that fees be paid to the plaintiff, who is the "prevailing party." (Paper No. 34 at 2-3.) On the other hand, plaintiff contends that the government misreads the statute by viewing this provision in isolation and relying solely upon the words "a court shall award [fees] to a prevailing party," instead of viewing the

statute as a whole, including the Savings Provision added in the

1985 amendments.  (Paper No. 35, 12-13.)  <u>See</u> Equal Access to

Justice Act, Pub. L. 96-481, as amended by Pub. L. 99-80, 99

Stat. 186 (1985).  The Savings Provision reads:

> Section 206(b) of the Social Security Act...shall not
> prevent an award of fees and other expenses under
> section 2412(d) of title 28, United States Code....
> Section 206(b)(2) of the Social Security Act...shall
> not apply with respect to any such award but only if,
> where the *claimant's attorney receives* fees for the
> same work under both section 206(b) of that Act...and
> section 2412(d) of title 28, United States Code..., the
> claimant's attorney refunds to the claimant the amount
> of the smaller fee.

<u>Id.</u> (emphasis added).  The Savings Provision directs the attorney

to refund to his client the lesser of his fee awards, if he is

awarded fees for the same work under both the EAJA and the Social

Security Act.  Plaintiff contends that this provision

acknowledges that the attorney is the direct recipient of the fee

award under both 28 U.S.C. § 2412(d)(1)(a) (EAJA) and 42 U.S.C. §

406(b) (the Social Security Act) and therefore is in the position

to refund or give the lesser fee amount to the claimant.  (Paper

No. 35, 13-14.)

The 1985 amendment does suggest the congressional

understanding as to the actual recipient of the attorney's fee

awards under EAJA.  That provision would not be necessary if, as

the government posits, attorney's fees under EAJA belong to and

necessarily go to the prevailing party.  This amendment can be

interpreted as anticipating that the attorney would receive directly the fee under EAJA, as well as the fee under 406(b).

At least one court has noted that another provision of the Act suggests that the fee should go to the attorney, not the client.  While the Tenth Circuit in <u>Manning v. Astrue</u>, 510 F.3d 1246, 1255 (10th Cir. 2007), as will be discussed later, ultimately found that the fee should go to the party, not the attorney, the court nonetheless observed that "it seems counter intuitive to hold that an award of attorney's fees does not go to the attorney, especially since the EAJA fees are calculated based on the time spent by the attorney and based on the attorney's hourly rate, <u>see</u> 28 U.S.C. § 2412(d)(1)(B), 2(A)." <u>See also</u> <u>Lyons v. Astrue</u>, 2008 WL 474285, *4 (S.D. Ala.) (quoting <u>Manning</u> for the above proposition).  Thus, this other provision of the Act suggests it is the attorney, not the party who is to receive the award for his actual, documented work.

As the plaintiff asserts, this Court must view the EAJA as a whole and construe section 2412(d)(1)(A) in harmony with every other section, including the Savings Provision and §§ 2412(d)(1)(B), (2)(A).  <u>See</u> <u>Smith v. United States</u>, 508 U.S. 223, 233 (1993) ("Just as a single word cannot be read in isolation, nor can a single provision of a statute."); <u>United Sav. Ass'n of</u> <u>Texas v. Timbers of Inwood Forest Associates, Ltd.</u>, 484 U.S. 365, 371 (1988) ("Statutory construction...is a holistic endeavor.  A

provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme ... because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.") (internal citations omitted).[2]  Although this Court does not find either the Savings Provision or §§ 2412(d)(1)(B), (2)(A) conclusive on the issue, those provisions cast doubt on the certitude of the prevailing party language of § 2412(d)(1)(A) and undermine the "coheren[ce] and consist[ency] of the statutory scheme the government urges. Robinson, 519 U.S. at 340; see also Singer, supra, § 45:2-8. Accordingly, the Court can – indeed must – go beyond the bare language of the statute to determine and effect Congressional intent.

However, even if the plain language of the statute was clear and unambiguous and did not engender questions about the coherence and consistency of all its provisions, Courts are entitled to look beyond the plain meaning of a statute in the rare instance where a literal application either "produces an

---

[2] This principle of statutory construction is applicable to all sections of a statute, including a savings provision. See Singer, supra, § 47:12. Singer states that courts should consider a savings clause "in the context of the entire act" and determine its effect "in the light of all relevant indicia of intent and meaning," but if the savings clause cannot be reconciled with the purview, such repugnancy invalidates the savings clause.  The savings provision here, of course, is not repugnant to the body of the Act.  Rather it can be seen as clarifying that an award can be made to the attorney under EAJA notwithstanding that an award was made to the attorney under 406(b), so long as the attorney only retains the greater of the two awards for the same work, giving the lesser to the claimant.

outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary" or "results in an outcome that can truly be characterized as absurd".  Hillman v. I.R.S., 263 F.3d 338, 342 (4th Cir. 2001).  See Haggar Co. v. Helvering, 308 U.S. 389, 394 (1940) ("All statutes must be construed in the light of their purpose.  A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose."); Singer, supra, § 45:12 ("[I]t is fundamental...that departure from the literal construction of a statute is justified when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies of the act in question.").  As discussed infra, this Court has concluded that adoption of the government's interpretation would effect an illogical result inconsistent with the purposes and policies of the EAJA.

### Interpretation of the Statute in Light of its Legislative History and Canons of Construction

Next, the Court must inquire into the legislative history to determine what interpretation the legislature intended when it enacted the statute. See Singer, supra, § 45:2-8; Robinson, 519 U.S. at 340-42.  The legislative history of the EAJA establishes that the purpose of the bill was to "reduce the deterrents and

disparity" in bringing litigation against the government by
entitling prevailing parties to recover an award of attorney's
fees and other expenses, unless the government can show it was
substantially justified in its action. H.R. Rep. No. 96-1418, at
6 (1980).  Congress aimed to provide "individuals an effective
legal or administrative remedy," regardless of their economic
background, where none existed. Id. at 12.  See also
Commissioner, I.N.S. v. Jean, 496 U.S. 154, 163 (1990) ("[T]he
specific purpose of the EAJA is to eliminate for the average
person the financial disincentive to challenge unreasonable
governmental actions.").  Key to retention of counsel is an
assurance that if successful, counsel would receive fees for his
or her work.  This Court finds that an interpretation of the EAJA
that awards fees to counsel, rather than the prevailing party,
best reflects Congress's goal of the statute – assuring the
competent representation of persons challenging unreasonable
government action.  Plaintiff contends that interpreting the
statute to make fee awards payable to the attorney furthers
Congress's purpose of enabling litigants to retain competent
counsel, while an award to the plaintiff would thwart Congress's
intent and result in an absurd outcome by discouraging
representation of Social Security claimants, while providing an
unintended windfall to litigants.  (Paper No. 35, 17-18.)
Plaintiff observes that were the awards payable to prevailing

parties, few attorneys would undertake representation of a Social
Security claimant with debt obligations because the EAJA fee
would be subject to seizure.  (<u>Id.</u>)[3]  Plaintiff argues, and the
Court agrees, that the lack of representation would be especially
prevalent on appeal, where, in the absence of an EAJA award,
counsel's payment under 406(b) will depend on the plaintiff's
eventual success on remand, and he will be required to share the
award with administrative counsel. (<u>Id.</u> at 18.)  This result will
lessen the award available to both attorneys, discouraging
administrative counsel from referring claimants to appellate
counsel. (<u>Id.</u>)  Significantly, the government does not rebut any
of these effects on counsel's fee and the resultant effect on
availability of counsel.  However, the government does assert its
own policy reasons as to why fees should be paid to the party,
arguing that making EAJA fees payable to the claimant "profoundly

---

[3] Section 406(b)(2) would not appear on its face to prohibit an
attorney from entering into a fee agreement with a client obligating
the client to pay the attorney the EAJA fee.  However, without actual
assignment of the fee, that contract obligation is arguably of little
value.  Even with an assignment, unless the government is willing to
pay the attorney directly on receipt of an assignment, there may be
collection issues, again discouraging counsel from representing Social
Security claimants especially on appeal.  None of the cases before me
involves an assignment by a claimant to his attorney of his right to
the EAJA fee.  In addition, at least one court has taken the position
that such assignment is ineffective under the regulations governing
the Treasury's power to collect nontax debts, 31 C.F.R.
285.5(e)(6)(ii)(C), and only prevents offset of debts that arise after
the date of the assignment. <u>See also</u> <u>Whitmore v. Astrue</u>, 2007 WL
276387 *5 (N.D. Cal.) (concluding that an assignment only protects an
attorney from offset of fees for debts of the plaintiff that arise
after the assignment becomes effective).

affects" the Treasury Offset Program; but, three pages later in its memorandum the Government states that "it is expected that making payment of EAJA awards to the plaintiff as the prevailing party will result in relatively few offsets." (Paper No. 34, 10, 12.)  This Court neither understands how relatively few offsets could have a profound effect on the program nor is persuaded that this argument is relevant to the question of congressional intent.  This Court believes a construction of the EAJA that effects windfall payments to individual Social Security claimants and reduces the availability of counsel for future claimants not only thwarts Congress's intent, but also is an irrational and unfair result.  Thus, to accept the government's interpretation of the statute is to find that the Congress intended the prevailing Social Security plaintiff to receive and retain attorney's fees even if that plaintiff did not pay any fees. That interpretation would result in a windfall to the party, or as defendant argues, a windfall to the government in receiving monies intended for counsel to pay an unrelated debt of the party frustrating the remedial goal underlying congressional action.

Also, the legislative history of the Savings Provision, the 1985 amendment to EAJA, is strongly supportive of this view of legislative intent.  The House Report discusses the change in law that would permit an award of EAJA fees notwithstanding the provision of the Social Security Act.  The report notes that "an

attorney collecting fees under the EAJA would have to use such fees to reduce the liability...of the claimant," and that the courts would be responsible for ensuring that the attorney used the EAJA award to reduce the liability of the claimant."  Equal Access to Justice Act, 1985, Pub. L. No. 99-80, 1985 U.S.C.C.A.N. (99 Stat.) 132, 148.  It further notes that the attorney may "seek recovery" under both statutes, and "keep the larger fee, but must return the amount of the smaller fee to the claimant." Id. at 149.

Venerable canons of construction also support this reading of congressional intent.  First, a statute is not to be interpreted in a vacuum.  It is presumed that the legislature is aware of the state of the law, including judicial interpretations given to same or similar statutory provisions, at the time of its enactment.  See Singer, supra, § 45:12.  Congress, is, therefore assumed to have adopted an existing interpretation unless it affirmatively indicates otherwise.  Pfizer, Inc. v. Food and Drug Adm., 753 F. Supp. 171, 178 (D. Md. 1990).  As will be discussed infra, there was considerable case law predating the 1980 enactment of EAJA and its 1985 amendment interpreting similar fee award statutes, finding that the fee award was the attorney's, not the prevailing party's.  Brandenburger v. Thompson, 494 F.2d 885 (9th Cir. 1974); Miller v. Amusement Enterprises, 426 F.2d 534 (5th Cir. 1970); Hairston v. R & R Apartments, 510 F.2d 1090

18

(7th Cir. 1975); <u>Rodriguez v. Taylor</u>, 569 F.2d 1231 (3rd Cir. 1977); <u>Plant v. Blazer Financial Services</u>, 598 F.2d 1357 (5th Cir. 1979); <u>Cornella v. Schweiker</u>, 728 F.2d 978 (8th Cir. 1984); <u>Wedra v. Thomas</u>, 623 F. Supp. 272, 278 (S.D.N.Y. 1985).

Second, in interpreting a statute, courts consider agency administration of a law prior to litigation.  Singer, <u>supra</u>, § 45:2 & n. 14.  The government acknowledged in its papers and at the hearing that until recently it had been making payments directly to the attorneys, but denies that administrative practice represented a legal view that the fees actually were the property of the attorney. (Paper No. 34, 10-13; Tr. 7, Nov. 14, 2007.)  The Commissioner is said not to have focused on the precise legal issue since the technology did not permit the matching of Social Security benefit recipients with federal debtors. (<u>Id.</u> at 11.)  Now with "the Department's recently acquired ability to enforce its centralized delinquent debt collection program, known as the Treasury Offset Program," the government is able to electronically match the prevailing Social Security claimants with those persons owing debts recoverable under the Act, and has consequently made a "change from his past practice of not objecting to court orders making EAJA fees payable to a claimant's attorney." (<u>Id.</u> at 11-12.)  This is a rather startling admission that the Commissioner was giving monies, which he at least now asserts is unequivocally and

unambiguously the lawful property of prevailing Social Security claimants, to their attorneys instead of to them.  Regardless of its motivation, it is indisputable that the Social Security Administration was administering the law consistent with, or acquiescing to, plaintiff's view of counsel's property rights in the fee award.  Long-continued practical interpretation of a statute by an administrative agency is influential in interpreting a statute.  Singer, <u>supra</u>, § 49:03; <u>International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Daniel</u>, 439 U.S. 551, 566 n.20 (1979), ("[A]n administrative agency's consistent, longstanding interpretation of the statute under which it operates is entitled to considerable weight.").  Moreover, when the agency adopts a conflicting position to its earlier position, the court is less bound to defer to the agency's interpretation.  <u>Singer</u>, <u>supra</u>, § 49:05; <u>Good Samaritan Hosp. v. Shalala</u>, 508 U.S. 402, 417 (1993), ("An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view.").  The government attempts to undermine the relevance of this law, asserting that it was not SSA policy to pay fees to plaintiff's attorney; rather, that SSA policy required payment to plaintiff, but SSA merely failed to object to requests directing payment to counsel.  (Paper No. 37, 5.)  The government's

position is untenable.

In sum, the legislative history of the EAJA and long standing principles of statutory construction dictate the conclusion that the fees are the attorney's, not the plaintiff's.

## Judicial Interpretation of the EAJA
## and other Fee Shifting Statutes

This Court's interpretation of EAJA is supported by earlier judicial interpretation of both EAJA and other fee shifting statutes.

### Prior Judicial Interpretations of the EAJA

Courts are split on this exact question under the EAJA. Some courts have hewed to the literal language of the EAJA and dismissed the Savings Provision, finding that the fee belongs to the party.  Others, including this Court, reject this conclusion as not mandated by statutory language and directly opposed to statutory purposes.  While courts are not to legislate, neither are they to effect an absurdity.  "While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and obvious purpose of the law should not be sacrificed to a literal interpretation of such words." E.F. Hutton Group, Inc. v. U.S., 811 F.2d 581, 586 (Fed. Cir. 1987) (quoting Peirce v. Van Dusen, 78 F. 693, 696 (6th Cir. 1897) (Harlan, J.)).  This Court is persuaded by those courts that have

considered the statute as a whole, the legislative intent behind its enactment, and the effects of both possible interpretations on Congress's goal of reducing the deterrents and disparity in bringing meritorious litigation against the government, without effecting an unintended windfall to prevailing parties.

Only the Tenth and Federal Circuits have decided the precise issue under the EAJA, and only the Tenth Circuit in a Social Security appeal.[4]  In Manning v. Astrue, the Tenth Circuit determined that the statutory language, legislative history, and case law dictate that an EAJA fee award is payable to the prevailing party, not his attorney. 510 F.3d 1246 (10th Cir. 2007).  At the same time, the Court acknowledged:

> ...that perhaps the answer is not as clear as it would appear to be from the statutory language, legislative history, and case law.  Admittedly, it seems counter intuitive to hold that an award of attorney's fees does not go to the attorney, especially since the EAJA fees are calculated based on the time spent by the attorney and based on the attorney's hourly rate, see 28 U.S.C. § 2412(d)(1)(B), (2)(A).  Indeed, the answer to the question "who do the fees go to" was not clear to the government, because it switched positions during the course of this litigation.

Id. at 1255.

This Court disagrees with the Manning opinion in several

---

[4] The Sixth Circuit has discussed the issue in dicta. See King v. Comm'r of Social Security, 2007 WL 930275, *4 (6th Cir.) (stating that only the plaintiff may request an award of fees, but the award must be payable to the attorney, while reversing a denial of attorney's fees awarded under the EAJA).

respects.  First, this Court disagrees with that court's
conclusion "that this statutory language clearly provides" that
the fee is payable to the plaintiff for the reasons discussed
supra.  Second, this Court respectfully disagrees with Manning's
analysis of the legislative intent of the EAJA, which drew a
bright line distinction between the legislature's intent that the
EAJA benefit claimants and counsel's need for payment.  See id.
at 1251 (finding that the EAJA was enacted to benefit the
claimant by ensuring that he or she has the resources to
challenge unreasonable government action, and therefore "was not
enacted for the benefit of counsel to ensure that counsel gets
paid").  This is a distinction uninformed by the realities of at
least the Social Security system.  For the reasons previously
discussed, this Court believes the Social Security plaintiff's
ability to challenge unreasonable government action is
inextricably tied to his or her ability to retain competent
counsel.  Because Social Security counsel's fees may be met only
by an award under the EAJA or 406(b), representation of any
Social Security claimant will be markedly less attractive if
receipt of the EAJA fee by appellate counsel cannot be assured,
and especially so where a claimant has outstanding debt
obligations whose EAJA award will be seized.  The Tenth Circuit
rejected as "speculative" Manning's similar argument that
"providing payment to her, instead of to counsel, might result in

counsel receiving no payment for the work he performed, thereby negating the purpose of EAJA ... [and] paying all EAJA fees to the claimant directly would have a chilling effect on a claimant's ability to obtain representation." Id. at 1254.  This Court does not find plaintiff's counsel's argument here "speculative" at all.  Nor did the government here identify any flaws in the argument or provide any counter-argument.

The Tenth Circuit goes on to say that the Supreme Court dismissed a similar argument in Evans v. Jeff D., 475 U.S. 717 (1986), regarding attorneys' fees under § 1988.  Id. Respectfully, Jeff D represented a markedly different situation, where the issue was the party's right to waive fees in settlement of his case, not the issue of to whom fees belong once requested. Unlike Social Security representation, an attorney in a § 1988 case may set the terms of his fee arrangement to essentially make waiver ineffective, that is, obligating the client to pay his attorney's fees, independent of any award of attorneys' fees, presumably from the award to the client.  Attorneys' fees are strictly regulated in Social Security cases.  The Social Security statute limits attorneys' fees to those provided under 42 U.S.C. § 406(b) or EAJA, under penalty of criminal sanction.  Moreover, claimant assignment to the attorney of any fees awarded under EAJA (if as the government claims those fees are the property of the claimant and payable only to the claimant) would appear to be

24

ineffective, at least as to the government's rights under 31
U.S.C. § 3176.  At the hearing, the government stated that
although they permitted assignments at this time, it took no
position on the legality of such assignments and whether it would
continue to consent to them in the future. (T. 4-5, Nov. 14,
2007.)  Nonetheless, in its brief the government cites Delgadillo
v. Astrue as support for its position, which decision flatly
prohibited assignment of EAJA fees to the attorney.

> The Delgadillo court specifically stated that EAJA's
> plain language was determinative on the payee issue.
> The court, after an extensive discussion of the
> relevant statutes, case law, and regulations, then held
> that the plaintiff has the beneficial interest in EAJA
> attorneys fees (which the Treasury Department would
> have the authority to offset), despite any interest
> claimed by the plaintiff's attorney.  Id. at 113.
> Consequently, the court held that the plaintiff's
> 'request that his attorney be directly assigned payment
> of the EAJA fees (thus circumventing his outstanding
> debts), is prohibited.'

(Paper No. 37, 10.)  See also Whitmore, 2007 WL 276387 at *5
(concluding that an assignment only protects an attorney from
offset of fees for debts of the plaintiff that arise after the
assignment becomes effective).  In effect, then, the Social
Security practitioner is not reasonably assured to any fees, but
those limited fees available under § 406.

Third, the Tenth Circuit discusses the Savings Provision as
an "uncodified" portion of the EAJA, "the purpose [of which] is
to ensure that the attorney does not receive double

compensation." Id. at 1251. The Court cites no authority for its limited reading of the Savings Provision. The primary goal of the Savings Provision may have been to make sure that an attorney did not receive compensation under § 406 and EAJA for the same work. That does not mean, however, that the language Congress used cannot be read as indicating its understanding that the attorney is the direct recipient of fee awards under § 406 and EAJA. This provision would seem to assume that the attorney will receive both awards. Similarly, the Court does not cite any authority for its insinuation that uncodified portions of the law have less effect than codified portions. This Court knows none. Thus, this Court respectfully disagrees with the Manning decision.

FDL Technologies, Inc. v. United States is the only other appellate decision discussing this question under the EAJA, albeit not in a Social Security appeal. 967 F.2d 1578, 1580 (Fed. Cir. 1992). In FDL, the Federal Circuit rested its analysis entirely on the plain meaning of the statute, holding that EAJA fee awards are payable to the plaintiff despite its prior contrary interpretations of other fee shifting statutes.[5]

---

[5] The FDL court quoted only the section of the EAJA that reads:

> An agency that conducts an adversary adjudication shall award, *to a prevailing party* other than the United States, fees and other expenses *incurred by that party* in connection with that proceeding....

Id.  In the majority decision, the Court found "[c]ases from other courts where attorney fee awards under various statutes, have been paid directly to counsel are unpersuasive.  All involve pro bono counsel where the award was paid directly to counsel in order to avoid giving the prevailing parties, usually prisoners or indigents, a windfall."  Id.  This Court does not see the meaningfulness of this distinction for purposes of statutory interpretation.  However, FDL was a public contractor and arguably distinguishable from the pro se plaintiffs in those cases.  But, the claimants in Social Security appeals are not. They are largely indigent.  To qualify for Social Security, they must be disabled and by definition, have not engaged in any substantial gainful employment for 12 months.  See 42 U.S.C. § 423(d)(1).  Receipt of the attorney's fee award would be a windfall, not contemplated as part of their benefits award and unless voluntarily paid to their attorney, their attorney is unlikely to be able to recover from them given their reduced financial situation.

The Federal Circuit also recognized the arguable unfairness of a contrary ruling under the particular facts described.  The prevailing party - FDL - was then in bankruptcy and an award

---

FDL, 967 F.2d at 1580 (emphasis in original).  Since FDL involved government action (or inaction) under the Prompt Payment Act, 31 U.S.C. §§ 3901-3907, no argument under the Savings Provision or §§ 2412(d)(1)(B), 2(A) was available, as those provisions pertain solely to Social Security awards.

directly to the attorney would in effect elevate the attorney's
unsecured claims for attorney's fees above the claims of secured
and priority creditors.  <u>Id.</u> at 1580 and n.1.  These factual
distinctions alone undermine <u>FDL</u> as precedent in a Social
Security appeal, such as presented here.  Moreover, the <u>FDL</u>
majority explained its interpretation of the EAJA (contrary to
its interpretations of other fee shifting statutes) by
emphasizing differences in the statutory language and legislative
history, but neglected to acknowledge the similar compelling
policies underlying the statutes.  <u>See id.</u> at 1582-6 (Newman, J.,
dissenting).  Finally, since <u>FDL</u> involved government action (or
inaction) under the Prompt Payment Act, 31 U.S.C. §§ 3901-3907,
no argument under the Savings Provision or §§  2412(d)(1)(B),
2(A) was available as those provisions, of course, pertain solely
to Social Security awards.

This Court found the dissent far more persuasive.  In her
dissent, Judge Newman argues that such a result was "not required
by the Equal Access to Justice Act, and defeated all of the
purposes of the Act."  <u>Id.</u> at 1582 (Newman, J., dissenting).  She
first asserts that the majority's decision subverted the purpose
of the act by discouraging representation of those seeking to
challenge unreasonable government action.  <u>Id.</u>  "Fee-shifting
statutes are not designed to benefit the bar.  However, they have
the intended and practical effect of encouraging attorneys to

take on meritorious suits when the client may be in precarious
financial condition." Id.  She then argues that precedent
supports a decision that effects the legislature's intent behind
the EAJA. Id. at 1583 (Newman, J., dissenting).  "Precedent
shows that the courts have followed a common sense policy of
protecting the statutory purposes of the fee award. The courts
have not always ordered the fees paid directly to the attorney,
but they have done so when the circumstances showed that to do
otherwise would or could defeat payment to the attorney." Id.
She cites judicial interpretation of various fee shifting
statutes with language similar to the EAJA, in which the courts
have determined that fees must be paid to the attorney to avoid a
windfall to the plaintiff, and argues that the majority erred in
its conclusion that the EAJA is distinguishable from these
statutes on its language. Id. at 1584-85 (Newman, J., dissenting)
(citing Cornella v. Schweiker, 728 F.2d 978 (8th Cir. 1984);
Miller v. Amusement Enterprises, Inc., 426 F.2d 534, 539 (5th
Cir. 1970); Hairston v. R. & R. Apartments, 510 F.2d 1090 (7th
Cir. 1975); Brandenburger v. Thompson, 494 F.2d 885, 889 (9th
Cir. 1974); Maher v. Gagne, 448 U.S. 122 (1980); Rodriguez v.
Taylor, 569 F.2d 1231 (3rd Cir. 1977); Grand Boulevard
Improvement Ass'n v. City of Chicago, 553 F.Supp. 1154, 1169
(N.D. Ill. 1982); Wedra v. Thomas, 623 F. Supp. 272, 278
(S.D.N.Y. 1985)).  She continued, rejecting the majority's view

29

"that the words 'to a prevailing party' distinguish the EAJA from other fee-shifting statutes and require a different application by the courts.  The 'plain meaning' rule does not support such a result. [...] The various legislative histories do not support the delicate distinction that is here drawn."  Id. at 1586.  This Court agrees with Judge Newman's interpretation of the EAJA, as more faithfully serving congressional intent.

Also persuasive are district court decisions in Social Security appeals that, like Judge Newman's dissent, engage in analysis beyond plain meaning and consider the legislative purpose behind the EAJA.  The Northern District of Alabama in Smith v. Astrue, No. 06-J-02052-IPJ, at *4-7 (N.D. Ala. October 11, 2007), after determining that the Savings Clause dictates that attorney's fees awarded under the statute should be payable to the attorney, since a different interpretation would render the Savings Clause superfluous, noted that its decision best satisfied the purpose of the EAJA, while a decision paying fees to the plaintiff and subjecting them to administrative offset would subvert the legislature's intent.  Id.  Likewise, in Richardson v. Astrue, the Western District of Missouri determined that a fee award under the EAJA must be paid to counsel, since "[c]learly an award for attorney's fees is intended to compensate the attorney, not generate income for the claimant so that it may be attached by other federal agencies." No. 06-0331-CV-W-SWH, at

*2 (W.D. Mo. Oct 2, 2007)).  <u>See also</u> <u>Whatley v. Astrue</u>, No. 2:07-cv-00117-UWC, at *3-4 (N.D. Ala. Nov. 2, 2007) (holding that the plain language of the EAJA requires the fee award payable to counsel, as any other reading would render the Savings Clause nonsensical) and <u>Hagman v. Astrue</u>, No. 5:06-cv-198-OC-GRJ at *8 (M.D. Fl. December 27, 2007) (holding that payment of EAJA fees directly to the attorney also is "consistent with the broad purpose for enacting the EAJA . . .  If the Commissioner's narrow position was adopted, there would be a substantial risk that counsel for a successful plaintiff might not be paid, which would have a chilling effect on the willingness of attorneys to represent indigent claimants in Social Security cases thus thwarting the primary purpose the EAJA was enacted.").

    Other earlier decisions addressing related issues of fee entitlement in <u>pro</u> <u>se</u> and <u>pro</u> <u>bono</u> situations under EAJA support this Court's view of the legislative intent of EAJA as to fees in this situation.  For instance, the Tenth Circuit has held that a <u>pro</u> <u>se</u> litigant may not recover attorney's fees under the EAJA because such an award would not further the statute's purpose of encouraging individuals to hire counsel.  "The statute attempts to enable meritorious litigation to take place, not to reward individuals who obtain legal redress".[6]  <u>Demarest v. Manspeaker</u>,

---

[6] Ignoring the above language and the fact that its ruling will "reward individuals who obtain legal redress," the Tenth Circuit in <u>Manning</u> distinguishes <u>Demarest</u> by stating that the "purpose of the fee

948 F.2d 655, 655-56 (10th Cir. 1991).  Also, the Eighth Circuit
has held that fees awards to pro bono counsel "have [been]
allowed ... under the EAJA with virtual unanimity."  Schweiker,
728 F.2d at 986-87.  The Court continued that a failure to allow
such awards would more than likely discourage representation and
reduce access to the judiciary for indigent individuals-a result
that "surely does not further the goals of the EAJA".  Id.
Similarly, if in the situation before this Court, counsel cannot
be assured that they will receive the fee award because the award
will go to the party in the first instance, the EAJA's purpose
likewise will be ill-served.

As one judge observed: "There has been very little dispute
until very recently about the law governing this issue and the
practice of paying fees directly to the plaintiff's attorney."
Hagman v. Astrue, Case No. 5:06-cv-198-OC-GRJ *5 (M.D. Fl. 2007).
See e.g., Barriger v. Bowen, 673 F. Supp. 1167, 1170 (N.D.N.Y.
1987); Price v. Sullivan, 756 F. Supp. 400, 405 (E.D. Wis. 1991);
Garcia v. Sullivan, 781 F. Supp. 969, 974 (S.D.N.Y. 1991).

---

award is to allow a claimant to present her claims without having to
bear the cost of litigation.  If one of the costs the successful
claimant has borne is attorney's fees, then she may, if eligible,
recover them under the statute."  510 F.3d at 1253 (citations omitted)
(emphasis added).  This is a fictional scenario in Social Security
appeals.  Social Security claimants do not pay their attorney's fees
upfront, hoping to recoup or recover their legal fees, if successful.
It is the attorneys who hope to receive fees for their representation
through awards under § 406 of the Social Security Act or EAJA, the
only sources by statute of payment.  The government has not – and
could not – challenge this factual context of this legal issue.

In sum, prior judicial interpretation of the EAJA further supports the view that an award of attorney's fees under the EAJA should be paid directly to the attorney.  To interpret the statute differently would require the Court to narrowly focus on the literal language of the statute, overlook the legislative intent behind its enactment, and disregard the effects of the interpretation on Congress's goal of reducing the deterrents and disparity in bringing meritorious litigation against the government, while providing an unintended windfall to prevailing parties.

## Interpretations of Other Fee Shifting Statutes

This Court's interpretation of the EAJA is also consistent with judicial interpretations of other comparable fee shifting statutes, some decisions notably prior to the 1980 enactment of the EAJA. These interpretations of other fee shifting statutes, favoring an award to the attorney, not the party, are forceful precedent for two reasons. First, the legislature's use of statutory language in the EAJA that was the subject of prior judicial interpretation constitutes the legislature's approval of that interpretation, as it is presumed to have acted with awareness of the existing law. Singer, supra, § 45:15.  See also Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 231 (4th Cir. 2007); Crosson v. Conlee, 745 F.2d 896, 901 (4th Cir. 1984).  Second, as

the government notes in its surreply brief, "the Supreme Court repeatedly has stated that prevailing party language in federal fee-shifting statutes should be interpreted consistently." (Paper No. 37, 6 n.3.) See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 603 n.4 (2001); Indep. Fed'n of Flight Attendants v. Zipes, 491 U.S. 754, 758 n.2 (1989); Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983).

Courts have found that the fee belongs to the attorney under the fee shifting provisions of the Civil Rights Attorneys Fees Act of 1976, the Internal Revenue Code, the Right to Financial Privacy Act, the Truth in Lending Act, the Civil Service Reform Act, the Fair Housing Act, Fair Labor Standards Act, and the False Claims Act.

### The Civil Rights Attorney's Fees Act of 1976

Because the language of the Civil Rights Attorney's Fees Awards Act closely resembles that of the EAJA, this Court finds decisions interpreting this act highly persuasive.[7] Compare Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b) (permitting the court to "allow the prevailing party...a reasonable attorney's fee") with the EAJA, 28 U.S.C. §

---

[7] Furthermore, the Government conceded at the hearing that cases interpreting the Civil Rights Attorney's Fees Awards Act would be highly persuasive in interpreting the EAJA if they in fact consider whether attorney fee awards are payable to the attorney or plaintiff. (T. 26, November 14, 2007.)

2412(d)(1)(A) (stating that the "court shall award *to the prevailing party*" fees). Also, the statutes share a common purpose: Congress intended that both would enable potential plaintiffs to secure assistance in litigating their rights. See Kay, 499 U.S. at 438 ("The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every case.").

As early as 1974, the Ninth Circuit held that attorney's fees awarded to plaintiff's pro bono counsel under § 1988 should be paid directly to counsel to avoid granting a windfall to the plaintiff.[8] Brandenburger, 494 F.2d at 888-89. Brandenburger was decided before the enactment of the EAJA in 1980, so, as discussed above, Congress is presumed to have had knowledge of the case when assigning similar language and a similar purpose to the EAJA. Moreover, in Curtis v. City of Des Moines, 995 F.2d 125, 129 (8th Cir. 1993), the Eighth Circuit confirmed that attorney fee awards belong to the attorney. In doing so, the

---

[8] The Government attempts to distinguish this case and others by arguing that pro bono cases are not relevant to the issue, since in pro bono cases plaintiffs may retain counsel without fee agreements and are not legally obligated to reimburse counsel. (Paper No. 37, 6-7.) But, under federal law, neither are Social Security claimants legally obligated to reimburse counsel. As discussed previously, under 42 U.S.C. § 406(b)(2), counsel representing social security claimants may not charge, demand, receive, or collect a fee for his service other than those awarded by the Social Security Act or the EAJA. Because these attorneys also may not structure their own fee agreements with clients, this Court sees no reason why pro bono cases are not relevant.

Court rejected the applicability of <u>Jeff D.</u> and <u>United States v. McPeck</u>, 910 F.2d 509 (8th Cir. 1990), finding fees are not subject to garnishment for the plaintiff's debt.  995 F.2d 125, 129 (8th Cir. 1993).  The court found that such a result satisfied the legislative purpose and intent behind the statute of encouraging attorneys to prosecute constitutional violations.[9] <u>Id.</u>

The government contends that the issue under § 1988, and by extension here under the EAJA, was resolved by the Supreme Court in <u>Jeff D</u>.  In <u>Jeff D.</u>, the Court held that the district court acted within its discretion in upholding the plaintiff's right to waive an award of attorney's fees under this statute as part of a settlement.  475 U.S. at 732.[10]  <u>See also</u> <u>Venegas</u>, 495 U.S. at 87 ("Section 1988 makes the prevailing *party* eligible for a discretionary award of attorney's fees.") (emphasis in original).  Reliance on <u>Jeff D.</u> for the general proposition that fee shifting

---

[9] The government denies that plaintiffs recovering awards under the EAJA might receive a windfall, asserting that "this argument is even stronger in the context of Social Security cases because the Commissioner sends EAJA fee checks (regardless of the payee) to the plaintiff's attorney." (Paper No. 37, 7. <u>See</u> <u>also</u> <u>id.</u> at 4 ("Plaintiff will not receive a windfall because the EAJA fee check, although payable to Plaintiff, will be sent to his counsel.")  Not only does the Court not see the relevance of this fact, it is perplexed by its premise: after vigorously asserting that the EAJA fee award belongs to the plaintiff, not his attorney, does the Government mean to suggest that the attorney should ensure his payment and prevent a windfall to his client by maintaining possession of his client's check?

[10] This Court acknowledges that the opinion contains the statement that the statute does not "bestow[ ] fee awards upon attorneys" <u>id.</u>; but that is certainly <u>dicta</u>, as other courts have found.  <u>See</u> <u>infra</u>.

statutes require *payment* of the fee award to the plaintiff is
misplaced, as <u>Jeff D.</u> holds only that the plaintiff, and not the
attorney, is entitled to <u>seek</u> an award of attorney's fees under
the Civil Rights Attorney's Fees Awards Act; the core issue in
<u>Jeff D.</u> and <u>Venegas</u> was who had the right to seek fees, not who
could receive the fee award.[11]   <u>See, e.g.</u>, <u>Pony v. County of Los
Angeles</u>, 433 F.3d 1138, 1144 (9th Cir. 2006) (finding that <u>Jeff
D.</u> "holds that an attorney is free to collect statutory
attorney's fees once a client has exercised his rights by

---

[11] Also improperly cited for the proposition that attorney's fees
awarded under the EAJA are payable to the plaintiff are <u>Panola Land
Buying Ass'n v. Clark</u>, 844 F.2d 1506 (11th Cir 1988), and <u>McGraw v.
Barnhart</u>, 450 F.3d 493, 503 (10th Cir. 2006). Like <u>Jeff D.</u>, <u>Panola</u>
holds only that the prevailing party, not counsel, has standing to
<u>seek</u> attorney's fees under the EAJA. <u>Id.</u> 1510-11. The <u>Panola</u> court did
not consider to whom the fees were payable. <u>But see</u> <u>Reeves v.
Barnhart</u>, 473 F. Supp. 2d 1173, 1176-77 (M.D. Ala. 2007); <u>Crittenden
v. Astrue</u>, No. 2:05cv616-SRW, *3-4 (M.D. Ala. October 30, 2007);
<u>McCarty v. Astrue</u>, 505 F. Supp.2d 624 (N.D. Cal. 2007) (all citing
<u>Panola</u> for the proposition that fee awards under the EAJA belong to
the plaintiff, not the attorney).
    Similarly, the court in <u>McGraw</u> held only that the district court
could award attorney's fees under the Social Security Act in
conjunction with a decision to remand for further proceedings. 450
F.3d at 503. In so holding, the court reasoned that "EAJA fees are not
always available, and even if they are, the award is to the claimant."
<u>Id.</u> This Court, like several other judges, does not read this language
as distinguishing between the plaintiff's right to seek the award and
the attorney's right to receive it. <u>See</u> <u>McKee v. Astrue</u>, No. CIV-05-
359-RAW (E.D. Okla. June 13, 2007); <u>Morrow v. Astrue</u>, No. CIV-05-511-
RAW (E.D. Okla. Sept. 13, 2007); and <u>Haymaker v. Astrue</u>, No. CIV-06-
0452-F (W.D. Okla. Aug. 7, 2007) (all finding that fees are payable to
the attorney, as <u>McGraw</u> stands only for the proposition that if an
attorney fee is awarded under both the SSA and the EAJA, the attorney
bears the burden of returning the smaller amount to the client). <u>But
see</u> <u>Dewey v. Astrue</u>, 2007 WL 2013599, *1 (D. Kan. July 9, 2007);
<u>Williams v. Astrue</u>, 2007 WL 2582177 (D. Kan. Aug. 28, 2007); <u>Simoneau
v. Astrue</u>, 2007 WL 2994062 (D. Kan. Oct. 11, 2007); <u>Delgadillo v.
Astrue</u>, No. 06-cv-01556-AP, (D. Colo. Aug. 21, 2007) (all citing <u>McGraw</u>
for the proposition that the fee award belongs to the prevailing
party).

demanding them"); <u>Willis v. Gov't Accountability Office</u>, 448 F.3d 1341, 1347 (Fed. Cir. 2006) (agreeing with the Ninth Circuit that <u>Jeff D.</u> "established that the entitlement to request fees belongs solely to the party," while recognizing "the attorney's right to collect the fees awarded");[12] Note, <u>Fee as the Wind Blows:</u> <u>Waivers of Attorney's Fees in Individual Civil Rights Actions Since Evans v. Jeff D.</u>, 102 Harv. L. Rev. 1278, 1285 (1989) (noting that "<u>Jeff D.</u> neither compels judicial passivity, nor bars attorney standing to intervene, nor vests the right to attorney's fees exclusively and invariably in the party").  While the courts certainly are not unanimous, scrutiny of all the case law compels this Court to conclude that the better view is that of courts finding (both before and after the enactment of the

---

[12] The Federal Circuit in <u>Willis</u> went on to discuss and harmonize the case law in this area.

> <u>Virani</u> and <u>Pony</u> both contain language indicating that a certain right 'vests' in the attorney.  <u>Virani</u>, 89 F.3d at 578 ('Once the power [to demand that the defendant pay attorney's fees] is exercised [by the plaintiff], however, the attorney's right vests, and the defendant's duty becomes fixed.'); <u>Pony</u>, 433 F.3d at 1142 ('Once the prevailing party exercises her right to collect fees, the attorney's right to collect them vests, and he may then pursue them on his own.').  As <u>Virani</u> demonstrates, the right that vests in the attorney is the right to receipt of fees that are awarded.  <u>See Virani</u>, 89 F.3d at 580 ('After Virani exercised his power to have the fee assessed against Lewis, he decided that he would like to receive the fee himself.  He cannot; the fee must go to [the attorney].').  Neither case suggests that an attorney has a right to independently *pursue the award,* and not just the right to *receipt* of the award.

<u>Willis v. Gov't Accountability Office</u>, 448 F.3d at 1347 n.4.  <u>But</u> <u>see</u> <u>Gilbrook v. City of Westminister</u>, 177 F.3d 839 (9th Cir. 1999), discussed in n.15 <u>infra</u>.

EAJA in 1980), that fees once sought, belong to the attorney on award under § 1988.

## The Right to Financial Privacy Act

The language of the Right to Financial Privacy Act also is similar to that of the EAJA.  Compare Right to Financial Privacy Act, 12 U.S.C. § 3417(a)(4) (stating that the Government "is liable to the customer" for fees) with EAJA (stating that "the court shall award to the prevailing party fees").  Judicial interpretation of this statute is forceful precedent not only because of the similarities in statutory language, but also because the acts share identical purposes of enabling individuals to attract attorneys and bring meritorious litigation and because the precedent is within the Fourth Circuit.  See H.R. Rep. No. 96-1418, at 6 (1980) and Duncan, 1989 WL 117742 at *2 (both stating identical purposes of enabling individuals to attract counsel and bring litigation).  In Duncan, the Fourth Circuit upheld the district court's decision to prevent offset of an award of attorney's fees under the Right to Financial Privacy Act to pay the plaintiff's military fine owed to the Government. 1989 WL 117742 at *1-2.[13]  The Fourth Circuit stated:

---

[13] Although citation of the Fourth Circuit's unpublished decisions issued prior to January 1, 2007 is disfavored, the local rules indicate that such decisions may be cited if the decision "has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well." Local Rule 32.1. This Court believes that Duncan is such a decision.

> In refusing to apply the setoff statute [31 U.S.C. §
> 3728(a), which provides that "[t]he Comptroller General
> shall withhold paying that part of a judgment against
> the United States Government presented to the
> Comptroller General that is equal to a debt the
> plaintiff owes the Government"], the district judge
> reasoned that to do so would be inconsistent with the
> purpose underlying the provision of the attorney's fees
> and costs in a Right to Financial Privacy Act case. The
> purpose in preventing apportionment he felt was to
> allow private individuals to interest attorneys, who
> because of the smallness of the award in such cases
> would not otherwise probably take them. Indeed, both
> parties agree that Judge Bryan correctly assessed the
> underlying purpose of the attorney fee provision and we
> are similarly persuaded.

Id. at *2.  Relying heavily on Plant v. Blazer Financial

Services, Inc. of Ga., 598 F.2d 1357 (5th Cir. 1979), the Fourth

Circuit agreed with the district court that offset of attorney's

fees would frustrate the purpose of the statute.  Id.  Because,

as discussed, various fee shifting statutes should be interpreted

consistently, Duncan dictates that fees under the EAJA should be

awarded to the attorney, and Duncan may signal the Court's

preference for more comprehensive interpretation of fee shifting

statutes to give effect to the legislature's intent, rather than

a more narrow construction to literal language of a single

provision of the law.

### The Internal Revenue Code

Because the language of the Internal Revenue Code is almost

identical to that of the EAJA, this Court finds judicial

interpretations of the provision highly persuasive.  Compare

Internal Revenue Code, 26 U.S.C. § 7430(a)(2)  (stating that "the prevailing party may be awarded" attorney's fees) <u>with</u> EAJA (stating that the "court shall award to the prevailing party" attorney's fees).  <u>See also</u> <u>United States v. Balanced Financial Management, Inc.</u>, 769 F.2d 1440, 1451 n.12 (10th Cir. 1985) ("There is no dispositive difference between standards involved in an award of attorney's fees under the Equal Access to Justice Act, which provides for an award of attorney's fees if the Government's position was not 'substantially justified,' 28 U.S.C. § 2412(d)(1)(A), and 26 U.S.C. § 7430, which provides for an award of attorney's fees if the Government's position was 'unreasonable.'").

Significantly, in <u>Marré v. United States</u>, the Fifth Circuit held that attorney's fees awarded under the Internal Revenue Code can not be set off against the plaintiff's tax liabilities because those fees belong to the attorney, not the plaintiff. 117 F.3d 297, 304 (5th Cir. 1997).  Notably, the government has conceded that the <u>Marre</u> decision interpreting the Internal Revenue Code provision controls the issue here under the EAJA, at least in the Fifth Circuit.  <u>See</u> <u>Bell v. Astrue</u>, No. 1:06cv0036-D-A (N.D. Miss. May 30, 2007), and <u>Guyton v. Astrue</u>, No. 1:06cv0189-M-A (N.D. Miss. May 30, 2007).

In <u>Marré</u>, the Fifth Circuit observed that "the prevailing party is only nominally the person who receives the award; the

real party in interest vis-à-vis attorneys' fees awarded under the statute are the attorneys themselves." Id. at 305 (citing Plant and Duncan discussed infra).  The court concluded that the fees could not be set off against the plaintiff's debts because they belonged to the attorney.  Id. at 304.

As stated above, the government has conceded that Marré dictates that attorney fee awards under EAJA are payable to counsel in the Fifth Circuit.  In both Bell and Guyton, the government withdrew its objection that the requested EAJA fees not be made payable to plaintiff's counsel, stating that "Defendant Agency has changed its policy in the Fifth Circuit to be consistent with Marré." Bell, No. 1:06cv0036-D-A (N.D. Miss. May 30, 2007); Guyton, No. 1:06cv0189-M-A (N.D. Miss. May 30, 2007).  Marré has not been cited in the Fourth Circuit, but Plant, one of the two linchpin decisions for its holding, has. Compare Duncan, 1989 WL 117742 (4th Cir.) with Marré, 117 F.3d 297 (both relying on Plant v. Blazer, 598 F.2d 1357 (5th Cir. 1979), to hold that statutory attorney's fees are not subject to set off against the plaintiff's debts).  While Marre is obviously not controlling in this circuit, it may deserve greater attention, if not deference, in light of the Duncan opinion, in this circuit.

### The Truth in Lending Act

The statutory language of the Truth in Lending Act also

42

resembles that of the EAJA.  <u>Compare</u> Truth in Lending Act , 15 U.S.C. § 1640(a) (stating that the creditor "*is liable to that person* [he has injured]") <u>with</u> EAJA (stating that the "court shall award *to the prevailing party*" attorney's fees).  Despite the Act's language, attorney fees have been found to belong to the attorney, not the injured party.  In <u>Plant v. Blazer</u>, the Fifth Circuit determined that "the attorney is entitled to the fee that is awarded him regardless of any controversy regarding the underlying debt;" thus, fee awards under the Truth in Lending Act are not subject to set off for the plaintiff's debts.  598 F.2d 1357, 1365 (5th Cir. 1979).  The court noted that the true issue was "not whether plaintiff is nominally to receive the money but whether ultimately it is to go to her attorney or to be credited toward defendant in repayment of plaintiff's debt."  <u>Id.</u> at 1366.  <u>Plant</u> was also decided before the enactment of the EAJA in 1980, so, as discussed above, Congress is presumed to have had knowledge of it when utilizing similar language and a similar purpose to the EAJA.  <u>See also</u> <u>Freeman</u>, 790 F.2d at 150 (finding that although an attorney has no independent right to seek fees under the Truth in Lending Act, previous cases suggest that the legislative purpose behind the statute "would be frustrated if the funds awarded for payment of attorneys' fees were used for some other purpose").

**The Civil Service Reform Act**

The Civil Service Reform Act provides that "the Board...may require payment by the agency involved of reasonable attorney's fees incurred by an employee...if the employee is the prevailing party." 5 U.S.C. § 7701(g)(1).  This statute has also been interpreted to award fees directly to the attorney.  In Jensen v. Department of Transportation, 858 F.2d 721, 722 (Fed. Cir. 1988), the Federal Circuit held that an award of attorney's fees under this act is properly payable to the attorney, not the client, even when the plaintiff has already partially paid counsel for his services and the statute has no reimbursement requirement. The court rejected the argument that paying fees to counsel would constitute a windfall to counsel, and instead determined that paying attorney's fees to the plaintiff would constitute a windfall to the plaintiff.  Id. at 723-24.  The Federal Circuit re-affirmed this decision in Willis, where it distinguished the attorney's right to collect the fee from the plaintiff's right to seek the fee.  448 F.3d at 1347-49 ("Under fee-shifting statutes in general, there is a distinction between the party's entitlement to claim an award of fees and the attorney's right to receipt of fees that are awarded.").[14]

---

[14] As previously discussed, the Federal Circuit distinguished Jensen in FDL on the differences in statutory language between the CSRA and the EAJA.  See FDL, 967 F.2d at 1580. This Court believes the FDL majority overemphasized the differences between the various fee shifting statutes and neglected to acknowledge the similarities of legislative purpose.

## The Fair Housing Act

The language of the Fair Housing Act provides that "the court..may *allow the prevailing party*...a reasonable attorney's fee." 42 U.S.C. § 1988(b) (emphasis added). This language has also been interpreted to require fees to be paid to the attorney, despite dictating on its face that fees are awarded to "the prevailing party."  See 42 U.S.C.A. § 3612(p).  In <u>Hairston</u>, the Seventh Circuit held that attorney's fees awarded to a plaintiff represented by <u>pro</u> <u>bono</u> counsel must be paid directly to counsel to avoid a windfall to plaintiff.  510 F.2d at 1090.  Because <u>Hairston</u> was decided before the enactment of the EAJA in 1980, Congress is presumed to have had knowledge of it when assigning similar language and a similar purpose to the EAJA.  <u>See also</u> <u>Grand Boulevard Improvement Ass'n v. City of Chicago</u>, 553 F. Supp. 1154, 1169 (N.D. Ill. 1982) (ordering payment of the EAJA award directly to plaintiff's pro bono counsel).

## The Fair Labor Standards Act

The Fair Labor Standards Act provides that "the court...may *allow the prevailing party*...a reasonable attorney's fee," and this language has been interpreted to require the fee award to be paid to counsel.  42 U.S.C. § 1988(b) (emphasis added).  In <u>Rodriquez</u>, the Third Circuit determined that a fee award under the statute must be paid directly to counsel to avoid a windfall to the plaintiff when the plaintiff is represented by a legal

45

services organization.   569 F.2d at 1245 (3rd Cir. 1977).

Rodriquez was also decided before the enactment of the EAJA in
1980, so, as discussed above, Congress is presumed to have had
knowledge of it when utilizing similar language for a similar
purpose to that of the EAJA.

### The False Claims Act

The False Claims Act provides that "[the qui tam plaintiff]
shall also receive...reasonable attorneys' fees," and fees
awarded in a qui tam action under this statute are also payable
to counsel.   31 U.S.C. § 3730.   In Virani v. Lewis, 89 F.3d 574,
577 (9th Cir. 1996), the Ninth Circuit interpreted this language
to mean that when a qui tam plaintiff requests attorney's fees
under the act, he creates a right in his attorney to receive
them.   See id. ("The client's right is really a power to obtain
fees for his attorney; the attorneys' right does not come into
being until the client exercises that power; the defendant's
liability will only arise if that power is exercised.").[15]

### Conclusion

Having considered the entire body of caselaw interpreting

---

[15] But see Gilbrook, 177 F.3d at 874 (finding that Virani does not
extend to § 1988 cases because: (1) Jeff D. dictates that "Congress
chose not to bestow fee awards upon attorneys" under § 1988, (2)
functional differences between civil rights claims and qui tam
actions, and (3) denying payment of fees directly to civil rights
attorneys is consistent with the statute's purpose, since "civil
rights lawyers can protect their interest in a fee award simply by
executing contracts").

fee shifting statutes, many of the decisions preceding the EAJA's enactment and subsequent amendment,[16] including Duncan, the only relevant Fourth Circuit precedent, the Court concludes that the EAJA allows - indeed anticipates - fee awards directly payable to the attorney.  Examination of the legislative history of the EAJA and principles of statutory construction support an interpretation of the EAJA that awards fees to counsel, rather than to the prevailing party, as most truly reflecting Congress' intent in enacting the statute.  Such an interpretation avoids an otherwise absurd result:  granting a windfall to the plaintiff and thwarting Congress' intent to enable litigants to bring meritorious litigation.  Thus, this Court believes that attorney's fees awarded under the EAJA must be paid directly to the attorney.  Such an interpretation will encourage attorneys to represent plaintiffs on appeal regardless of their economic status or federal debts, thereby furthering the statutory purpose of continuing to reduce the deterrents and disparity that exist in bringing litigation against the Government.  See H.R. Rep. No. 96-1418, at 6 (1980). This Court's decision promotes the most

---

[16] Prior to 1980, the Court can find no decisions denying payment of the fee award to the attorney.  As discussed supra, there were a number of decisions awarding fees directly to the attorneys, sometimes explaining the award in the face of language as at issue here.  See Brandenburger, supra; Plant, supra; Miller, supra; Hairston, supra. Also after the enactment, there were other decisions directing payment to the attorneys without explanation, treating it as a matter of course.  See, e.g., Garcia v. Sullivan, 781 F. Supp. 969, 974 (S.D.N.Y. 1991); Price v. Sullivan, 756 F. Supp. 400, 405 (E.D. Wis. 1991); Barriger v. Bowen, 673 F. Supp. 1167, 1170 (N.D.N.Y. 1987).

reasonable interpretation of the statute, is consistent with both the policies and purposes behind the statute and prior judicial interpretations of similar statutes, and prevents the absurd and unjust result that would result from a literal construction of a statute, in this Social Security appeals context.

This Court will not decide whether attorney's fees awarded under the EAJA would be subject to administrative offset under 31 U.S.C. § 3716 _if_ the awards were payable to the plaintiff.  None of the cases before the Court present the issue.  Moreover, should it be found that the award is payable to the plaintiff, it would hardly seem certain that setoff would be permitted of EAJA fees.  The _Duncan_ decision, involving a similar interplay between a fee award statute and a setoff statute, suggests the possible view of the Fourth Circuit disfavoring setoff.  The government has noted that the Social Security fees awards are not expressly exempt from setoff. (Paper No. 37, 4.)  Of course, it could be as persuasively argued that the EAJA (and other attorneys' fees awards) are not expressly exempted under 31 U.S.C. § 3716 or its implementing regulations because it was understood that the awards belonged to the attorney, not the party, in line with the extant caselaw so holding as of 1996, the time of the enactment of the legislation.  _See_ _supra_.  In any event, under this Court's holding that attorney fee awards are payable to the attorney, not the plaintiff, the awards are the property of the attorney and

48

therefore not subject to offset for the plaintiff's debts. <u>See</u>
<u>Marré</u>, 117 F.3d at 304 (finding that "the government cannot set
off [the plaintiff's] tax obligations against the attorneys' fee
award, as no mutuality of debt exists between the government and
[the plaintiff's] attorneys").

### **Plaintiff's Counsel Is Entitled to an Additional Fee Award**

This Court further finds that the plaintiff's attorney is
entitled to an additional fee award under the EAJA for his time
spent litigating this issue. <u>See</u> <u>Commissioner</u>, 496 U.S. 154 at
160-161 (holding that EAJA fees may be awarded for fee litigation
without a separate finding that the Government was not
substantially justified in its position as to the fee litigation,
as "the single finding that the Government's position lacks
substantial justification...operates as a one-time threshold for
fee eligibility" ... [and] "presumptively encompasses all aspects
of the civil action").  The Government recognizes that this Court
has the authority to award an additional fee without making a
second substantial justification finding.  <u>See</u> <u>Cordova v. Astrue</u>,
8:06-cv-02475-SKG, Paper No. 24, 11.  It argues, however, that
the Court should strike down the fee application because the
plaintiff has no interest in whether the EAJA fees are payable to
him or his counsel; instead, the Government asserts that "the
only interest being pursued in the Reply is making collection of
the EAJA more convenient for Plaintiff's attorney." <u>Id.</u> at 12.

This Court disagrees entirely.  As discussed throughout, the
interest at stake is that of future claimants, and whether they
will have an effective legal remedy to challenge unreasonable
government action in the future.  Counsel's actions in these
cases will potentially ensure that such a remedy exists by
enabling these litigants to retain competent counsel to assist
them in securing their rights.  For that reason, the Court finds
plaintiffs' counsel entitled to an additional fee award under the
EAJA for time spent litigating this issue.


Date: 3/12/08                            /s/
                         Susan K. Gauvey
                         United States Magistrate Judge